.EARLY v. WHITTINGHAM.

1. **Tax Sale: RECORDS: EVIDENCE.** Where there were no records showing that there was any assessment, levy or sale for a certain year, nor evidence that such records had once existed and been lost, *held*, that the *prima facie* evidence of the assessment, levy and sale, based upon the deed, is overcome and no title is thereby conferred upon the alleged tax purchaser or his grantees.

2. **——: STATUTE OF LIMITATIONS.** An action for the recovery of land held and occupied under a tax deed based upon a fictitious sale is not barred in five years after the alleged sale took place.

3. ———: REPAYMENT OF SUBSEQUENT TAXES: INTEREST. The one in possession under such a sale is entitled to receive from the owner a sum equal to all he has paid for subsequent taxes, with interest thereon at six per cent.

## *Appeal from Woodbury District Court.*

### MONDAY, APRIL 24.

THE petition states that the plaintiff is the owner of certain real estate described in the petition, and that his title is derived from and through a sale of the premises for delinquent taxes, and a conveyance to the parties under whom the plaintiffs claims by the treasurer of the county; that the plaintiff is in the constructive possession of the premises, and has paid all the taxes thereon since the sale.

The answer denies the allegations in the petition, and states that the alleged sale was fraudulent and void, because there was no assessment, levy or sale, and for the reason the lands in controversy and many other tracts and parcels of land were sold in a lump together; that the defendant did not discover the alleged frauds until A. D. 1873. Neither party pleaded the statutory bar. The following are the agreed facts:

1. Defendant entered the land in 1857 and has not parted with his title, and is the owner thereof unless he has been deprived of his title by the sale for taxes and the tax deed made thereunder.

2. That the land was sold by the treasurer of O'Brien county, October 20th, 1861, and that the plaintiff is the owner of whatever title was derived through such sale and the treasurer's deed thereunder.

3. That the plaintiff and his grantors have paid all the taxes on the land since October 20th, 1861, and the plaintiff is the owner of all claims for taxes paid.

4. That the lands in controversy were entered upon the tax list of O'Brien county for the year A. D. 1860, and said lists delivered to the proper officer for collection.

5. That the minute book of the proper levying board of said county for 1860 and 1861 is lost or missing from the

office of the proper officer of O'Brien county and from said county, *if they ever had any such book.*

6. That at the date of the commencement of this action, March 13th, 1873, defendant had not discovered the alleged frauds in reference to the assessment, levy, sale and deed for said lands. That from 1861 to 1865 defendant was in the Confederate States, and during such time there was no communication between that section of the country and the state of Iowa.

7. There were nine separate and distinct forty-acre tracts included in the deed.

The court below declared the sale and treasurer's deed void, and that the title to the premises be quieted in the defendant; and also that the levy of taxes for which the land was sold was void.

The court further decreed that the defendant pay the plaintiff all amounts paid by him, or those under whom he claims, as taxes assessed since 1860 on the land, with the same rate of interest thereon which said taxes would have borne had the same remained delinquent and unpaid at the date of the decree, and the cause was referred for the purpose of stating the account. Both parties appeal.

*Kellogg & Herrick,* for plaintiff.

*Joy & Wright,* for defendant.

SEEVERS, CH. J.   I.   It was held in *McCready v. Sexton,* 29 Iowa, 356, that an assessment, levy and sale were essential to the validity of a tax sale, and that the deed was only presumptive evidence of the existence of either or all of these requisites.   By the introduction of the deed the plaintiff has made out his case, and the burden is cast on the defendant. The plaintiff insists that his *prima facie* case is strengthened by the tax warrant which was introduced in evidence, and is as follows: "District Clerk's office, O'Brien County. I hereby certify that the within tax list for the year 1860 is correct, and require the treasurer to proceed to the collection of the same.

December 11, 1860. H. C. Tiff, clerk D. C." It having, however, been agreed that the lands were entered on the tax list, which was delivered to the proper officer for collection, it is difficult to see in what way or manner the so called tax warrant in any way tends to aid the plaintiff.

It appears that previous to the year 1860 O'Brien county was attached to Woodbury, and that the former was organized January 26th, 1860, and the first election held on the 6th day of February of that year, at which a county judge, clerk and treasurer were elected, and the plaintiff claims that the judge, treasurer and surveyor, by the law then in force, constituted the proper levying board, and hence insists that the presumption is said officers performed the duty in this respect incumbent on them. This may be admitted, and yet the *prima facie* case made by the introduction of the deed in evidence is not in any way aided or strengthened.

II. Under the law then in force, the year 1859 was the proper and only time for assessing real estate, that is, the valuation fixed or assessed in that year, controlled the valuation and assessment for the year 1860, and inasmuch as no assessor was elected in O'Brien county for 1860, and as no testimony was introduced showing when or how the valuation for that year was ascertained, or the property assessed, the defendant insists that plaintiff's *prima facie* case is overcome thereby, when taken or considered in connection with the following certificates given by the county auditor and treasurer, which were introduced in evidence.

" STATE OF IOWA, ⎰ ss.
COUNTY OF O'BRIEN. ⎱

I, A. J. Edwards, auditor of the county of O'Brien, in the State of Iowa, do hereby certify that I am custodian of all the records and proceedings of the county judge and Board of Supervisors of said county in reference to the levy of taxes in said county, and all the records of said county since the organization pertaining to the levy of taxes in said county, so far as the same remains of record in my office.

.That I have made diligent search and examination of the

records of said county and the proceedings of the county judge and the Board of Supervisors of said county relative to the levy of taxes in said county, and find that there is nothing in said records showing that there was ever any levy of taxes on the property of said county, real or personal, or any part thereof, for the year 1860, or any year prior thereto. And I further certify that I have examined and am custodian of all the assessment books and lists of said county, so far as the same remains of record in my office, and find on said examination that there is nothing in said assessment books showing any assessment of the property of said county, either real or personal, for the year 1859 or 1860, and the records of said county do not show any assessment of the property of said county for the year 1859 or 1860.

In witness whereof, etc.            A. J. EDWARDS,
[Seal of O'Brien county.]                      Auditor."

"STATE OF IOWA,      } ss.
COUNTY OF O'BRIEN.  }

I, J. C. Doling, treasurer of said county, do hereby certify that I am custodian of the tax lists and register of tax sales of said county; that I have examined the same and that said tax books aforesaid do not show that the lands described in Exhibit "A," below attached, were sold in 1861 for the taxes of the year of 1860, and there is nothing in my office showing that said lands were sold in 1861 for the taxes of the year 1860, or that any part of them were sold for the taxes of 1860 in 1861.            J. C. DOLING, Treasurer.

In witness, etc.                By S. HARRIS, Deputy."

No objection was made to the introduction of these certificates, and their effect is the only matter for our consideration.

In determining the question whether there was any levy of taxes the agreed statement of facts does not aid us, for the

1. TAX sale: reason that it absolutely establishes nothing whatrecords: evi-
dence.       ever. The agreement being merely *if there ever was* a minute book showing a levy, it has been lost or mislaid. It is not agreed that there was such a book, conse-

quently if there never was one it could not be lost or mislaid. There is no testimony tending to show that there ever was such a book, or any book or record of the sale which should be in both the offices of the auditor and treasurer, except that contained in the agreed statement of facts. It therefore necessarily follows, there is no testimony tending to show the loss or destruction of such books or records.

Under such circumstances the strong and conclusive presumption must be, that all the books or records relating to the assessment, levy or sale, which ever existed are now on file or among the other records in the offices of the treasurer and auditor. There could have been neither an assessment, levy or sale, without some written evidence or record thereof. And it is made the duty of the said officers to preserve the same in their respective offices. The loss or destruction of such records, without any proof, cannot be presumed. We are of the opinion, therefore, that the decided weight of the testimony is in favor of the position that there never was an assessment, levy or sale. It follows that the taxes of 1860, for the non-payment of which the land in controversy was sold, are absolutely void, and that neither the plaintiff nor those under whom he claims obtained any rights thereby or under the tax deed.

III. Section 902 of the Code provides that "No action for the recovery of real property *sold for the non-payment* 2. ——: stat- *of taxes* shall lie, unless the same be brought ute of limita- tions. within five years after the treasurer's deed is executed and recorded as above provided * * ."

It is only where the land has been sold for the non-payment of taxes, that the statute applies. As we have held there was neither a levy, assessment or sale, the bar of the statute does not apply, and such was the ruling in *Case v. Albee*, 27 Iowa, 277.

IV. There being no assessment, levy or sale, the plaintiff or those under whom he claims took nothing by the deed, nor 3. ——: did he or they obtain thereunder or thereby any repayment of subsequent rights whatever. It follows, therefore, that he had taxes: inter- est. no right to pay the subsequent taxes, nor was any

duty cast on him in this respect. In paying such taxes he or those under whom he claims were mere volunteers. What was done in this respect, however, was beneficial to the defendant, and as the latter in the answer to the petition has " offered to pay all taxes paid by the plaintiff with interest," he should not be permitted to withdraw such offer or to escape complying therewith. But it is neither just or equitable, under the circumstances of this case, to compel him to pay the statutory interest or penalty, which the taxes would have borne if they had never been paid. The defendant should pay six per cent interest only from the time the several amounts were paid, except as to the taxes of 1860. As none such were assessed or levied, the defendant should not be charged therewith. This case is clearly distinguishable from *Everett v. Beebe*, 37 Iowa, 452.

AFFIRMED AS TO PLAINTIFF'S APPEAL.

REVERSED AS TO DEFENDANT'S APPEAL.