ROOSEVELT et al. v. SCHILE et al.

(Supreme Court, Appellate Division, First Department. June 10, 1904.)

1. MORTGAGES—FORECLOSURE—SALES—SETTING ASIDE—RESALE.
    A mortgage covered lots A and B. A second covered lots A, B, and C. A third covered lots A and B. A fourth covered lots C and D. A fifth covered lots A, C, D, and E. A sixth covered lots A, C, D, and E. All the mortgages were foreclosed. Sales were had only under judgments foreclosing the third and sixth mortgages. At the sale under the judgment foreclosing the third mortgage, only lot B was offered for sale, and it was sold subject to the judgments foreclosing the first and second mortgages, and a deed was duly made to the purchaser. The amount realized was not sufficient to pay the judgment. The lots covered by the sixth mortgage were then sold under the judgment foreclosing that mortgage, subject to judgments in the other actions. *Held*, that orders setting aside the sales and ordering a resale on motions of the guardian ad litem for some of the defendants were proper; it being impossible to tell for what sum any piece sold, or how much the whole property realized.
    Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Separate actions by John E. Roosèvelt and others against Romeo H. Schile and others to foreclose separate mortgages. From orders setting aside sales had under judgments of foreclosure in two actions, and ordering a resale, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

James A. Speer, for appellants.
John M. Perry, for infant respondents.
William G. McCrea, for respondents Lange and others.
Edw. W. S. Johnston, for respondents Schile and others.

PATTERSON, J. These are two appeals by the plaintiffs alone from orders of the Special Term made in two actions, viz., Nos. 3 and 6. Those actions were brought for the foreclosure of mortgages, and at the same time other actions, known as 1, 2, 4, and 5, were

pending, and all of the six actions went to judgment. The mortgages foreclosed were upon premises on 125th street and 126th street, in the city of New York, and the situation of the several mortgages and their relation to the property can only be understood by reference to the following diagram:

126th St.

Third Ave.

125th St.

Mortgage in action No. 1 was for $33,725, covering lots A and B; No. 2, for $8,287, covering lots A, B, and C; No. 3, for $9,369, covering lots A and B; No. 4, for $28,156, covering lots C and D; No. 5, for $11,258, covering lots A, C, D, and E; No. 6, for $22,208, covering lots A, C, D, and E.

Although each of these foreclosure suits went to judgment, sales were made only in actions Nos. 3 and 6. It will be seen at a glance that here are overlapping mortgages. At the sale the property was bid in by certain persons, and it is sufficient now to say, as the record is presented, that the orders from which the appeals are taken by the plaintiffs alone sufficiently protect any rights or possible claims of purchasers, and therefore no further consideration is required of that matter.

After the sale in actions Nos. 3 and 6, the guardian ad litem for some infant defendants made motions to set aside such sales and for a resale of the premises. Those motions were based upon the facts that, notwithstanding the judgments in foreclosure in the other actions, the plaintiffs only advertised sales under judgments in actions Nos. 3 and 6; that on the sale the plaintiffs first proceeded under the judgment recovered in action No. 3, which covered both parcels A and B, but only offered parcel B, and, in so doing, announced that the same was sold subject to the judgments recovered in actions 1 and 2, specifying the amounts, and that all bids for that plot would be taken, over and above the amount due in actions 1 and 2, making

the price to be paid for the plot B the amount to be paid on the two prior judgments thereon, plus the amount of cash bid, notwithstanding that the judgments not only covered and were liens upon the parcels so offered, but upon two other parcels, A and C, as well. The premises were knocked down by the auctioneer for the sum of $1,000. The terms of sale were afterwards signed, and a deed for the property delivered to the purchaser. Other facts appear with reference to the sale of property in action No. 6. After parcel B was sold in action No. 3, although the plaintiffs had not realized the full amount due in that action, they abandoned the sale under the judgment. That is to say, they did not sell parcel A, but proceeded to sell under the judgment in action No. 6, and created a situation which, with reference to the terms upon which the property was offered and bid in, is analogous to that upon the sale in action No. 3, namely, selling subject to judgments in other actions than the one in which the sale was made. This statement of the way in which the sales were conducted under the terms of sale indicates the way in which was brought about the result well stated by the court below, viz., that "the manner in which the property was sold made it quite impossible to tell for what any piece of property sold, or how much the whole property realized."

The matter is involved in so much confusion that, if the guardian ad litem had appealed, we should have been much inclined to set aside the sale absolutely. But as it is, and as the orders are made on his motion, we think they should be affirmed in each case, with costs. It is not intended by this decision to prevent a proper application, on a showing of additional facts, for further instructions as to a resale of the premises.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur. INGRAHAM, J., concurs in result.

LAUGHLIN, J. (dissenting). In each of these cases the plaintiffs have appealed from an order of the Special Term setting aside a judgment of foreclosure and sale, and ordering a resale. The plaintiffs were the owners of six mortgages, each being a lien upon two or more of five parcels of land, which for convenience will be designated A, B, C, D, and E, situated between 125th and 126th streets, a little west of 3rd avenue, in the city of New York. Two of the lots front on 125th street, and the other three on 126th street. The plaintiffs instituted a separate foreclosure action on each mortgage, and have obtained a separate judgment for the foreclosure and sale of the premises covered by each. The order of priority of these mortgages, and the amounts due thereon, respectively, at the date of sale, are as follows: Mortgage No. 1, foreclosed by action No. 1, was given in October, 1889; covers lots A and B; and the amount due was $33,725. Mortgage No. 2, foreclosed by action No. 2, was given in April, 1893; covers lots A, B, and C; and the amount due was $8,237. Mortgage No. 3, foreclosed in action No. 3, was given in April, 1894; covers the same lots as mortgage No. 1; and the amount due was $9,369. Mortgage No. 4, foreclosed by action No.

4, was given in August, 1895; covers lots C and D; and the amount due was $28,156. Mortgage No. 5, foreclosed by action No. 5, was given in November, 1895; covers lots A, C, D, and E; and the amount due was $11,258. Mortgage No. 6, foreclosed by action No. 6, was given in July, 1898; covers the same lots as mortgage No. 5; and the amount due was $22,208. The judgment of foreclosure in action No. 3 was obtained July 3, 1902; in actions Nos. 1, 2, and 4, July 7th; and in actions Nos. 5 and 6, September 11th of the same year. The interests of many of the defendants are different in the different parcels, but the same parties are owners of the equity of redemption in most instances, although in some their rights are in controversy. The judgment contains no direction with respect to the order of sale of the several parcels, although a request for a direction in that regard was made by some of the defendants. There has been no sale under any of the judgments, except those in actions Nos. 3 and 6, in which the appeals are taken. The sales under these judgments were conducted at the same time and place, but by different referees. The referee in action No. 3 first offered lot B for sale subject to the judgments in actions Nos. 1 and 2. Although the sale was fairly well attended, the only bid offered was by the attorney for the plaintiffs, who bid the amount of the taxes and expenses, and the property was struck off to him. Parcel A was not offered for sale in action No. 3. The referee in action No. 6 then offered separately for sale the parcels covered by that mortgage, subject to the judgments of foreclosure and sale in the other actions, and the property was struck off to the attorney for the plaintiffs upon his bid, covering merely the taxes and expenses. After the referees filed their respective reports, exceptions were filed thereto by some of the defendants. No motion was made for the confirmation of the report, and it has not been confirmed. A motion was made by the guardian ad litem for certain of the infant defendants in each action, upon affidavits showing that the sale conducted in the manner stated was not calculated to produce the most favorable results, to set aside the sale, or sustain the exceptions filed to the reports of sale, and the motions were granted. It is stated that an appeal has been taken in each case in behalf of certain of the defendants who contend that the plaintiffs were the purchasers on the foreclosure sales, and that by purchasing subject to the judgments the judgments became paid, and, where the purchase was subject to a judgment which had been thus paid, the plaintiffs hold the judgment as trustees for the defendants, and they rely upon the case of Freeman v. Auld, 44 N. Y. 51, as authority for this proposition; but, as already stated, the only appeal now before us is that taken by the plaintiffs, who contend that the sales were regular, were properly conducted, and should not have been set aside. The court has a wide discretion on a motion to set aside a sale, and "may relieve against mere mistakes, accidents, or hardships, or oppressive or unfair conduct of others, although such conduct may not amount to a violation of law." Fisher v. Hersey, 78 N. Y. 387. It is manifest that the discretion of the court was wisely exercised in setting aside these sales. The practice pursued was calculated to needlessly increase the expense of the fore-

closure of the mortgages, and to prevent competitive bidding at the sale. The mortgages are all owned by the same parties. Those covering the same premises, at least, should have been foreclosed in the same action; and, this not having been done, the separate actions to foreclose mortgages on the same premises should have been consolidated, or the plaintiffs should have been denied costs. Mayor v. Coffin et al., 90 N. Y. 312; Wooster v. Case et al. (Sup.) 12 N. Y. Supp. 769; Biron v. Edwards and Biron v. Scott, 77 Wis. 477, 46 N. W. 813. The same referee was appointed to conduct the sales in actions Nos. 1 to 4, inclusive, and another referee in actions Nos. 5 and 6. We think the same referee should have been appointed in all. It was proper to proceed to foreclosure and sale in actions Nos. 3 and 6, because the judgments in those actions, taken together, authorized the sale of all the parcels; but we think the parcels should have been sold free and clear of incumbrances, and not subject to the foreclosure judgments. The plaintiffs have no absolute right to have the sale under one particular judgment made subject to the judgment in another action. All of their rights are subserved if the sales are conducted in such manner that the premises will bring their full fair value, or the largest amounts obtainable upon a foreclosure sale. The plaintiffs being the owners of all the judgments which affect many of the same parcels, it would have been competent and proper for the court, if the interests of the defendants required it, as it seems to us they do, and a proper application had been made therefor, to have directed that the separate parcels be sold free and clear of the liens of the foreclosure judgments. Andrews v. O'Mahoney, 112 N. Y. 567, 20 N. E. 374. If the sales had been conducted in this manner, they would likely have resulted advantageously, by bringing the highest price, because then bidders could act intelligently, knowing that, if the property should be awarded to them, their bid represented its cost, free and clear of incumbrances, whereas, at the sales had, the terms of sale were so involved and uncertain that bidders were evidently deterred. The amount realized on each parcel could then be apportioned and distributed according to the rights of the respective parties, upon the well-settled principles of equity applicable, and as if the sales had been conducted in the inverse order of alienation. It appears that there was a building on parcels A, E, and B, being three stories on 125th street, and five stories on 126th street. If the value of this building rendered the lots of greater value for sale together, this should have been directed; and for the purpose of, in that event, determining the proportion of the bid to be credited to each parcel, the parcels could have been first offered separately, and then together, and the amount for which they sold as a whole could be credited to the respective parcels in the proportion that the highest bids for the respective parcels bore to one another. Cornell v. McCann, 48 Md. 592. This method of exposing the property for sale would determine whether the lots would sell to better advantage separately or together, and, if the latter, would determine approximately the value of the parcels separately for the purposes of distribution of the proceeds. The referee could either be directed to credit the amounts received properly to

the respective parcels, and distribute the same to the plaintiffs and parties entitled thereto, or to report the same to the court, if it was thought that there would be necessity therefor.

It appears that the attorney for the plaintiffs took title from the referee, and then conveyed to the plaintiffs, who subsequently conveyed parcels C and D for $40,000. The court at first set aside the entire sale, but these facts were made to appear on a motion for a reargument, and the order was modified by confirming the same as to these parcels, and directing that $40,000 be credited upon the mortgages. It was further shown on the motion for a reargument that the plaintiffs, after thus obtaining title, leased parcels A, E, and B for a period of 21 years at an annual rental of $6,250, with the privilege to the lessee of purchasing the same for $125,000 prior to the 1st day of January, 1908. The court further modified the order by directing that the resale of these parcels be made subject to this lease. Upon the facts appearing in the record before us, I am of opinion that the sale should have been vacated in toto. The plaintiffs had actual notice, and their grantees had constructive notice, that the referees' reports of sale had not been confirmed. Conveyances of premises purchased on a foreclosure sale prior to the confirmation of the report should not be allowed to influence the discretion of the court on an application for a resale involving the rights of parties to the suit. Such purchasers obtain no right except the right to be reimbursed for the amounts paid and interest, as against the right of the parties to the suit who move for a resale. 1 Barb. Ch. Pr. 529; Brown v. Frost, 10 Paige, 243, 247; Peck v. Knickerbocker Ice Co., 18 Hun, 183; F. L. & T. Co. v. B. & M. T. Co., 11 Civ. Proc. R. 307; N. Y. E. C. B. & M. Society v. Bishop (Sup.) 8 N. Y. Supp. 60.

Plaintiffs ask that the order be reversed, the motions denied, the exceptions to the referee's report overruled, and that the foreclosure sales be confirmed. I am of opinion that the order should be reversed or modified as to the terms of the resale. We cannot now decree any relief in favor of the defendants, because their appeal is not before us. If, as appears to me, the same should have been conducted in the manner suggested, the report of sale not having been confirmed, some of the parties should move at Special Term for an order that the sales be conducted as here outlined.

I therefore vote for a modification of the order by striking out the terms of resale, without costs to either party, and with leave for a further application at Special Term by any party as herein suggested.